SUZANNE EDENS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Edens
Docket No. 21940-89
United States Tax Court
T.C. Memo 1992-686; 1992 Tax Ct. Memo LEXIS 720; 64 T.C.M. (CCH) 1415; November 30, 1992, Filed *720 Decision will be entered for respondent. For Petitioner: James Robert Tanfield. For Respondent: Richard D. Fultz. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE WOLFE, Special Trial Judge: Respondent determined the following deficiencies in and additions to the Federal income taxes of Ralph G. and Suzanne P. Edens: Additions To Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1983
$ 6,986
$ 349
[1]
$ 1,747
1984
8,354
418
[1]
2,089
*721 In a stipulation of settled issues filed December 3, 1990, Suzanne P. Edens, petitioner in this case, conceded the substantive adjustments to her 1983 and 1984 tax returns as proposed in the statutory notice of deficiency. [2] The sole issue presented for decision is whether petitioner is entitled to relief from Federal income tax liability as an innocent spouse under section 6013(e) for the taxable years in issue. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation of facts and attached exhibits are incorporated by this reference. Petitioner resided in Fairfax, Virginia, at the time she filed her petition herein. During the years in issue petitioner was employed by British Caledonian Airways as either a cargo *722 development manager or sales manager. Prior to their divorce in 1988, petitioner and Ralph G. Edens had been continuously married for approximately 19 years. Petitioner and Ralph Edens filed joint Federal income tax returns for the 1983 and 1984 tax years. During those years, Ralph Edens received but did not report the following amounts as income on petitioners' 1983 and 1984 joint income tax returns: Year
Amount
Payor
1983
$ 19,600
Child recovery operations
1983
1,850
Various
1983
4,500
Omega Group, LTD
Total 1983
$ 25,950
1984
$ 11,300
Child recovery operations
1984
3,200
Omega Group, LTD
1984
1,000
LTD Defense Fund
1984
1,600
Various
1984
2,500
Omega Group, LTD
Total 1984
$ 19,600
On their 1983 joint return, petitioner and Ralph Edens reported adjusted gross income of $ 39,204. Of this amount, petitioner earned $ 38,024.90 from British Caledonian Airways. Ralph Edens earned $ 1,104 of the total income reported in 1983. This amount was reported as royalties on a Form 1099-Misc. from Paladin Enterprises, Inc. On their 1984 return, petitioner and Ralph Edens reported adjusted gross income of $ 47,851. Of this amount, petitioner earned $ 45,631.36 from British *723 Caledonian Airways. Ralph Edens earned $ 2,125.25 of the total income reported in 1984. This amount was reported as royalties on a Form 1099-Misc. from Paladin Enterprises, Inc. The adjusted gross income reported on the returns for 1983 and 1984 also included less than $ 100 of interest income for each year. Ralph Edens prepared the joint Federal income tax returns in issue, and both he and petitioner signed them. Petitioner attended college for about 2 years but did not receive a degree. After college, and through the years in issue, she worked in the airline industry. Petitioner was promoted numerous times and worked her way up from a job as a reservations agent to a managerial position. She was employed by TWA as a reservations agent for 2 years and then by National Airlines for 13 years. At National Airlines, her work initially involved telephone reservations and then international reservations for 9 years. As part of her duties in international reservations, petitioner dealt with tariffs and regulatory matters. Following her work in international reservations, petitioner was transferred to a position working with computers. She remained in this position for less than *724 a year. Then she was transferred to the tariff department. Petitioner was responsible for preparing forms that were required to be filed in connection with submissions of applications for rates and showing compliance with regulations and tariffs. Petitioner left her position in the tariff department of National Airlines to accept a position at British Caledonian Airways as a tariff manager responsible for the North American region. Her duties included filing the necessary regulations, fares, or rates with various government agencies and preparing any necessary documentation for the publishing companies that published the rates, fares, and regulations. Petitioner remained in this position for approximately 1-1/2 years. In 1983 she became a cargo sales manager. Her duties included promoting and selling the airline's cargo services and managing a sales force of three employees. Petitioner was responsible for reviewing the work of the sales force and for budgeting. Ralph Edens worked in construction for approximately the first 3 to 4 years of the marriage. Gradually he stopped working in construction and began working in freelance journalism and photography. After his construction *725 employment ended, he did not hold a 9 to 5 job for the remainder of the marriage. Petitioner was aware that Ralph Edens was working for an organization called the Omega Group. She knew that the Omega Group was involved in political journalism, and that the position involved extensive travel. Petitioner was aware that the Omega Group held conventions, and that Ralph Edens attended these conventions. Petitioner endorsed a check payable to Ralph Edens from the Omega Group in the amount of $ 316.68. Petitioner was aware that her husband filled out expense reports when he returned from traveling. As part of his work, Ralph Edens traveled at least 6 months of the year. Petitioner was aware that her husband was involved in child recovery operations and that on one occasion he traveled to South America to recover a child. Petitioner traveled with Ralph Edens on a trip to Israel and joined him in El Salvador on another occasion. She and their son accompanied Ralph Edens to Colorado where he attended a Christmas party held by the Omega Group. During the years in issue, petitioner and her husband maintained a joint checking account. Petitioner had access to the joint bank account *726 and regularly wrote checks on that account. She deposited her checks from British Caledonian Airways into this account. Ralph Edens took responsibility for paying the normal household expenses when he was not traveling. He usually received the mail at home when it came in the morning. Petitioner was aware that her husband had a separate post office box. During 1983 and 1984, at least 14 deposits were made each year by or for Ralph Edens in the joint bank account he shared with petitioner. The gross amount of these deposits in 1983 was $ 19,678.91, less cash withdrawals and fees of $ 6,529.78, a minimum net deposit of $ 13,149.13. The gross amount of these deposits in 1984 was $ 21,708.18, less cash withdrawals and fees of $ 1,540, a minimum net deposit of $ 20,168.18. Additional deposits in the amount of $ 2,106.66 were made in the joint account in 1983 and cannot be allocated between petitioner and her husband. Petitioner and Ralph Edens were overdrawn on their joint checking account on three occasions during the taxable years 1983 and 1984. Petitioner did not own anything of significant value, except for some Waterford Crystal that she acquired over a period of time. Petitioner's *727 take-home pay each month was approximately $ 2,300, and the family's monthly expenses were approximately $ 1,600 to $ 1,700. OPINION Under section 6013(d)(3), spouses who file a joint income tax return are jointly and severally liable for the tax owed. However, the liability of an innocent spouse may be relieved under section 6013(e)(1), if the following requirements are met: (1) A joint return has been made for the taxable year in issue; (2) on such return, there is a substantial understatement of tax attributable to grossly erroneous items of one spouse; (3) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, of the existence of such substantial understatement; and (4) upon consideration of all of the facts and circumstances, holding the other spouse liable for the deficiency in tax attributable to such understatement would be inequitable. Under such circumstances, the other spouse shall be relieved of liability to the extent that such liability is attributable to such understatement. Sec. 6013(e)(1)(A) through 6013(e)(1)(D); . Petitioner *728 has the burden of proof as to all the requirements of section 6013(e)(1). Rule 142(a). The parties agree that the first two requirements of section 6013(e)(1) are satisfied. The parties do not agree as to whether petitioner knew or had reason to know of the omitted income or whether, under the facts and circumstances here, it would be inequitable to hold her liable for the income tax deficiencies and additions to tax attributable to the understatement. Petitioner must establish that in signing the return she did not know, and had no reason to know, that a substantial understatement existed. See sec. 6013(e)(1)(C). The spouse claiming to be relieved from liability for omission from income of an item must be unaware of the circumstances which give rise to that omission and not merely of the tax consequences of those circumstances. , affd. . Although petitioner testified that she did not lead an extravagant life and that her former husband was away from home at least 6 months a year in connection with his occupation, her testimony and the family *729 financial records show that petitioner knew or had reason to know of the substantial understatements of income on the 1983 and 1984 returns. The standard to be applied in determining whether a putative innocent spouse has "reason to know" is whether, at the time of signing the returns, a reasonable person in the taxpayer's circumstances could have been expected to know of the substantial understatements or that further investigation was warranted. . Petitioner was educated and was successful in her career in the airline industry. Her responsibilities included interpreting and preparing complex documents, budgeting, and reviewing. When she signed her 1983 and 1984 Federal income tax returns, petitioner was an experienced business person who held a responsible supervisory position for a large airline. Nevertheless, petitioner testified that for many years she allowed her former husband to keep her almost entirely ignorant of his activities and income and of the family finances. Petitioner explained that although she knew Ralph Edens was working with Omega Group, she thought he was working for the thrill *730 of adventure and not for compensation. Although Ralph Edens made numerous deposits to the joint bank account, petitioner suggested that so far as she knew these deposits were not recorded in the check register. She testified that although she paid the household bills during the half of the year when her husband was absent, she did not review the register, never looked at the monthly bank statements or the returned checks, and never reconciled the account. At trial she did not have the check register and explained that her husband took possession of all of the family financial records for the years at issue when he and petitioner were divorced. In our view, petitioner's explanation of her alleged total ignorance of her husband's income is unpersuasive. Petitioner testified that she signed the joint returns in issue without making any inquiries. Nevertheless, she assumed a responsibility when she signed the joint returns that she cannot abdicate. A spouse who executes a joint return may in fact have no actual knowledge of irregularities in the return which she signs, but she cannot close her eyes to matters which would put her on notice that there might be income which was unreported *731 on the return. ; see also . Petitioner was an intelligent woman and should have questioned whether Ralph Edens had been working for 10 or 15 years without any compensation. She may have preferred not to know about the details of her former husband's work, but was on notice that his occupation involved travel and the performance of services, and she had a duty to inquire about the proper reporting of income on the joint tax returns. See Id.
The only items of income reported on the returns that were attributable to Ralph Edens were small amounts of royalty income. This was so even though petitioner knew that her former husband was involved in child recovery operations and was often away from home to pursue these activities. Even if Ralph Edens was secretive about his activities, petitioner must have been aware that he was receiving income from some source. She had every reason to inspect the income tax returns carefully to make sure they were correct. Although petitioner testified that her former husband normally took responsibility for *732 the bills, he was away during much of the years in issue, and at least during his absences she took care of the household expenses and had unrestricted access to the joint checking account and check register. Ralph Edens' earnings were deposited in the joint bank account in substantial amounts. Regardless of whether those deposits were entered in the check register, certainly they were reflected in the monthly bank statements. The check register of the joint bank account was available to petitioner and she regularly wrote checks on that account. Information about the joint account was available to her from the bank. Her former husband was away half the time and she had to pay household bills from the joint account and assure that it was not overdrawn. Her own testimony and the bank records establish that petitioner was involved significantly in the family finances. Her involvement in the financial affairs of the family should have alerted her to the fact that a substantial amount of income was being received and not reported on the returns at issue. See . Because of petitioner's business acumen, *733 her involvement in the financial affairs of the family, the deposit of income by or for Ralph Edens into petitioners' joint bank account, and her access to information that should have put her on notice that her former husband was earning income that was not reported, we conclude that petitioner had reason to know that Ralph Edens' income was not included in their Federal income tax returns filed for the years in issue and that there were substantial understatements of income on such returns. We hold that petitioner is not entitled to innocent spouse relief. Having reached the conclusion that petitioner knew or should have known of the substantial understatements of income on the joint Federal income tax returns she filed with her former husband for 1983 and 1984, we need not consider the further issue of the inequities of holding petitioner liable for the deficiencies and additions to tax if the facts had been otherwise. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest due on the portion of the deficiency attributable to negligence or intentional disregard of rules or regulations.↩
2. Ralph G. Edens was severed from this case, and his petition was filed separately in docket No. 28059-90. An Order of Dismissal and Decision was entered on December 27, 1990, against Ralph G. Edens for the full amounts of the deficiencies and additions to tax for 1983 and 1984.↩